UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.  Case No. 8:05-CR-475-T-27TGW

THOMAS SPELLISSY and
STRATEGIC DEFENSE INTERNATIONAL, INC.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Suppress Results of Search (Dkt. 21), the Government's Response in opposition (Dkt. 22) and the Defendants' Reply (Dkt. 25). The Court conducted an evidentiary hearing on April 18, 2006 pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1] The parties filed supplemental briefs after the hearing (Dkts. 39, 40, 41). Upon consideration of the evidence and testimony presented, Defendants' Motion to Suppress Results of Search (Dkt. 21) is DENIED.[2]

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. It requires that search warrants be based on probable cause determined by a neutral magistrate. This case presents an unsettling example of a search warrant issued by a judge

---

[1] To the extent the Government suggests that "it is arguable whether defendants even made a sufficient showing mandating that this Court order that a hearing be held", that suggestion is somewhat disingenuous, given the Government's acknowledgment that Defendants "specifically identify several statements that they allege are false . . . or made in reckless disregard of the truth." (Dkt. 22, p. 2). Moreover, the Government did not object to the *Franks* hearing. *Id.*

[2] Defendants are charged by Indictment with bribery, mail fraud and conspiracy (Dkt. 1). There is nothing in Robert Calvert's affidavit remotely implicating Spellissy or SDI in bribery or mail fraud.

who was presented an affidavit with misstatements of fact, statements made in reckless disregard for the truth and omissions of favorable, material facts. Notwithstanding, absent the false and reckless statements, and even considering the material omissions, the affidavit establishes probable cause that Spellissy violated 18 U.S.C. § 207(a)(2).

## Procedural background

Pursuant to a search warrant issued by a United States Magistrate Judge, Defendant Spellissy's residence was searched on April 14, 2005. Contending that the affidavit lacked probable cause, Defendants seek an order suppressing items seized during the search and items obtained as a result of leads which the seized items may have supplied, including documents, emails, letters and other written materials. (Dkt. 21 at p. 2).

The warrant was issued based on the affidavit of Robert Calvert who was, at the time, a special agent for the Department of Defense. The Inspector General's Office had initiated an investigation of Spellissy, a retired United States Army colonel with the U.S. Special Operations Command (SOCOM). Calvert was brought into the investigation by the Inspector General's office. Col. Kruelskie, Inspector General, briefed Calvert on the investigation. Col. Kruelskie alleged: *"that Spellissy, prior to his retirement, was involved with representing a foreign interest, through SDI, in order to influence the awarding of future government contracts."* (¶ 7)[3] *(emphasis added)*. Col. Kruelskie *"revealed that Spellissy was instrumental in having SOCOM submit a request through the Department of Defense to the U.S. House of Representatives, Committee on Appropriations, for approval of purchasing a 70mm rocket warhead under the Foreign Comparative Testing (FCT) program from the Nordic Ammunition Company (NAMMO), Raufoss, Norway."* Id. *(emphasis added)*.

---

[3] References to Calvert's affidavit will be made by citing the relevant paragraph (¶ __).

Probable cause for the search warrant was based on 18 U.S.C. §§ 207(a) and (b) or 208(a). Correctly described by Calvert as the "conflict of interest" laws, § 207(a) restricts former officers of the executive branch from representing others "in connection with a particular matter" before any department or agency of the United States.[4]

### Omissions

Defendants contend that Calvert's affidavit contains false statements, material omissions, and misleading statements intended to deceive the Magistrate Judge. In sum, Defendants contend that Calvert did not disclose that Spellissy left active duty on July 31, 2004, relinquishing all procurement authority and that he was not the PEO-SP after that date. Defendants contend that Calvert falsely represented that Spellissy was the PEO-SP through December 31, 2004, during the time he represented NAMMO. Further, Defendants contend that Calvert did not disclose that in July 2004, in anticipation of his retirement and prospective employment with NAMMO, Spellissy sought and obtained an ethics opinion from Lt. Col. Shelly Econom of the Judge Advocate's Office which

---

[4] In summary, § 207(a)(1) permanently restricts former officers from representing contractors before a department of the United States with the intent to influence the department in connection with a particular matter in which that person *personally and substantially* participated in as an officer. *(emphasis added)*

§ 207(a)(2) prohibits an officer from representing a contractor before a department of the United States within two years after termination of the officer's service *in connection with a particular matter* in which the United States has a direct interest and the officer knows or reasonably should know was actually pending under the officer's official responsibility within one year before the officer's termination of service and *involves a specific party* at the time it was so pending. *(emphasis added)*

18 U.S.C. § 208(a) prohibits a former officer from personally and substantially participating as a government officer in a matter in which an organization with whom he is negotiating or has an arrangement for future employment without first obtaining, after full disclosure, a written determination by the government official responsible for his appointment, that the interest is not so substantial as to be deemed likely to affect the integrity of the services which the government may expect from the officer.

authorized his pre- and post-retirement employment with NAMMO, except with respect to two specific programs over which he had official responsibility as PEO-SP. (Dkt. 21, Exh. A).[5] Finally, Defendants point out that Calvert did not disclose that Spellissy had applied for and obtained the express approval of Dr. Uhler, his superior, to be employed by SDI during his terminal leave, prior to December 31, 2004 in "off duty employment" involving "working for a firm or other entity that is engaged, or is endeavoring to engage, in business transactions of any sort with an agency of the Department of Defense." (Dkt. 21, Exh. C).

### Misrepresentations

*"Your affiant has learned from documents as provided by SOCOM that Spellissy was assigned as the Program Executive Officer, Special Operations (PEO-SP) for the SOCOM from April, 2001 to his retirement on December 31, 2004."*(¶ 6)

Defendants correctly contend that, contrary to Calvert's averment, no "documents" describe Spellissy as the PEO-SP through December 31, 2004. During the *Franks* hearing, Calvert testified that he relied on several documents within a binder provided to him by the Inspector General's office in drawing this conclusion. (Gov. Exh. #1). Although he identified three specific documents in the binder when asked to identify the documents from which he "learned" that Spellissy was the PEO-SP through December 2004, not one of those documents identify Spellissy as the PEO-SP through December 31, 2004. When confronted with that, Calvert hedged. Realizing that there were no documents identifying Spellissy as the PEO-SP, Calvert vaguely referred to "some other," unspecified documents which he could not produce from the binder. Calvert's demeanor when confronted with this misstatement suggested to this Court that he was less than candid in his

---

[5] Lt. Col. Econom opined that Spellissy's employment could not involve an advance lightweight grenade launcher program and a pre-fragmented programmable high explosive ammunition, for which Spellissy had been "PEO and Milestone Decision Authority (MDA)."

testimony, supporting Defendants' contention that he either had deliberately misrepresented Spellissy's status to the Magistrate or recklessly disregarded the truth, which he was unable to explain.

Defendants contend that the most egregious misrepresentation in Calvert's affidavit is his characterization of Spellissy as the PEO-SP for SOCOM "to his retirement on December 31, 2004." By all accounts, that statement was false. Spellissy was not the PEO-SP for SOCOM after July 2004. After July 2004, he was succeeded by Captain Roland Huss. It is undisputed that Spellissy relinquished all procurement authority to Captain Huss on July 31, 2004, a fact Captain Huss testified was well known at MacDill.

Ultimately, Calvert acknowledged that he "made the leap" that Spellissy was the PEO-SP until December 31, 2004, even though he knew that Captain Huss had succeeded Spellissy as PEO-SP on July 31, 2004. More importantly, for purposes of the validity of his affidavit, Calvert confirmed that he let the Magistrate "assume" Spellissy was the PEO-SP during the time he was working for NAMMO:

> **Question**: November 27, December 4th, never. You just said he was PEO-SP and just let it go and then packed an affidavit with all sorts of things that he said in November - - late October, November and December of 2004, and let the magistrate assume he's the PEO-SP, and he's on the take from a foreign corporation, right?
>
> **Answer**: Yes

(Tr. 112-13).

This telling acknowledgment by Calvert demonstrates, at a minimum, a reckless disregard for the truth. Moreover, in this instance, his testimony confirms that he purposely represented that Spellissy was the PEO-SP through December 31, 2004, knowing that to be untrue. Yet, he allowed the Magistrate Judge to assume that Spellissy remained on active duty with full procurement

authority while at the same time working for NAMMO, a Department of Defense contractor. This misrepresentation of Spellissy's active duty status permeates the entire affidavit, as evidenced by the final relevant paragraph: "This e-mail appears to indicate that Spellissy was employed by NAMMO prior to his retirement date of December 31, 2004." (¶ 13).

As of August 2004, Spellissy effectively retired from the Army. (Dkt. 21, Exh. D (Certificate of Retirement, 8/31/04)). From then until December 31, 2004, Spellissy was on "terminal leave," using up accrued leave. His official military capacity had ceased. He was not, therefore, contrary to Calvert's sworn statement, PEO-SP for SOCOM during the November-December 2004 period when he began working for NAMMO. Calvert's statements were false and misled the Magistrate Judge into believing that Spellissy was a high ranking procurement officer when he was employed by NAMMO.[6] This false statement must necessarily be redacted according to *Franks* in determining whether the affidavit otherwise established probable cause.

> ***"According to Colonel Kruelskie, his investigation to date has revealed that Spellissy was instrumental in having SOCOM submit a request to the Department of Defense to the House of Representatives, Committee on Appropriations, for approval of purchasing a 70mm rocket warhead under the Foreign Comparative Testing (FCT) program from the Nordic Ammunition Company (NAMMO), Raufoss, Norway"*** *(¶ 7).*
>
> ***"Colonel Kruelskie provided a copy of a letter prepared by the PEO-SP, dated May 12, 2004, and submitted to the Deputy Under Secretary of Defense, listing the 70mm rocket warhead as the second highest priority of SOCOM's for FCT approval"*** *(¶ 7).*

After falsely representing Spellissy as the PEO-SP through December 31, 2004, in the next

---

[6] To the extent Calvert attempts to justify and explain his statement based on Spellissy's duty title as "PEO-Special Programs," had he made any inquiry whatsoever, he would have learned that Spellissy's duty title did not accurately reflect his actual status after July 2004. As Captain Huss testified, Spellissy's relinquishment of his status as PEO-SP was well known. At the very least, Calvert's representation that Spellissy was the PEO-SP through December 31, 2004 was made with reckless disregard for the truth.

paragraph, Calvert describes his briefing by Col. Kruelskie in which it was alleged that "Spellissy, prior to his retirement, was involved with representing a foreign interest, through SDI, in order to influence the awarding of future government contracts." Calvert then describes Spellissy as having been *"instrumental"* in having SOCOM submit a May 2004 procurement request for the purchase of the NAMMO 70mm rocket warhead. (Dkt. 21-2 at ¶ 7)(*emphasis added*).

Defendants contend that these two statements are false in three respects. First, they contend that Spellissy was not "instrumental" in submitting the May 24, 2004 procurement request. They argue that the extent of Spellissy's involvement was reviewing the letter as PEO-SP. Second, Defendants correctly point out that the letter was not, contrary to the representation of Calvert, "prepared by the PEO-SP" (Spellissy) but rather was drafted by staff, reviewed by Spellissy and ultimately signed on behalf of Dr. Uhler by an aide. Third, Defendants correctly contend that the actual procurement request did not identify NAMMO specifically as the vendor for the 70MM rocket warhead.

Defendants contend that Calvert's use of the word "instrumental" falsely represented that Spellissy, as PEO-SP, had done more than merely review and approve the letter before it was submitted to Dr. Uhler for signing. Notwithstanding, this Court cannot agree that Calvert's use of the word "instrumental" was either intentionally false or recklessly made. Moreover, given Spellissy's undisputed procurement authority and the importance of the 70mm rocket warhead, the PEO-SP's review of the letter could very well have been accurately described as instrumental. Regardless, for purposes of probable cause, whether or not Spellissy was "instrumental" in having the procurement request submitted is not material to whether his involvement with NAMMO in subsequent meetings with the government regarding the 70mm rocket warhead constituted a

violation of § 207(a)(2).

Even if Calvert's description of Spellissy's involvement with the procurement request for the 70mm rocket warhead as "instrumental" was an exaggeration made with reckless disregard for the truth, redacting it from the affidavit does not diminish probable cause. While its redaction may obviate probable cause as to whether Spellissy "personally and substantially" participated as an officer in the procurement process for the 70mm rocket warhead for purposes of a § 207(a)(1) violation, probable cause remains that Spellissy's conduct constituted a violation of § 207(a)(2). Whatever the extent of Spellissy's involvement in the procurement request, there was probable cause to conclude that he knew or should have known that the 70mm rocket warhead was a particular matter "pending under his official responsibility" as PEO-SP within one year of his termination and that it "involve[d] a specific party," to wit: NAMMO. Probable cause for a § 207(a)(2) violation therefore exists, independent of the misrepresentation as to who prepared the procurement request and whether Spellissy was "instrumental" if submitting the request.

As to Calvert's statement that the letter had been "prepared by the PEO-SP", that statement is undeniably false. Spellissy was the PEO-SP at the time but he did not "prepare" the letter. By averring that the May 24, 2004 procurement letter was "prepared by the PEO-SP," Calvert effectively misrepresented that Spellissy was the author of the procurement request which could ultimately benefit NAMMO (Dkt. 21-2 at ¶ 7). Actually, as Calvert knew, the May 2004 procurement letter was drafted by staff, reviewed by Spellissy in the ordinary course of the procurement process and signed by an aide of Dr. Uhler's. Calvert acknowledged during his testimony that he could have, "but did not" clarify that.

The materiality of this misstatement is apparent, since an officer violates § 207(a)(1) only

if he represents a contractor in connection with a "particular matter" in which he had "personally and substantially" participated in as an officer. Preparing a procurement letter for a NAMMO rocket warhead would constitute "personally and substantially" participating as an officer. Merely reviewing a draft letter which would be signed by a superior officer likely would not, as Lt. Col. Econom's ethics letter explained in distinguishing between a § 207(a)(1) and (a)(2) violation. As Calvert knew, the letter had not been "prepared" by Spellissy, his statement that the PEO-SP had prepared it was made with reckless disregard for the truth. It is subject, therefore, to redaction for purposes of Defendants' motion to suppress.

Finally, with respect to Defendants' contention that the procurement request did not, contrary to the representation by Calvert, actually identify NAMMO as the vendor of the 70mm rocket warhead, Defendants are correct. However, according to Captain Huss, the 70mm rocket warhead was considered to be "synonymous" with NAMMO. Captain Huss agreed that to the extent the affidavit stated that the procurement request was for a NAMMO 70mm rocket warhead, that would be false, since there were other vendors capable of bidding on a 70mm rocket warhead. He maintained, however, that NAMMO was the "sole manufacturer of a 70 millimeter warhead for that 2.75 rocket."

An officer who represents a contractor in connection with particular matter which the officer knows or reasonably should know was pending before him in his official responsibility within the last year of service and which involves a specific party violates § 207(a)(2). Calvert's affidavit incorporated Col. Kruelskie's allegation that the 70mm rocket warhead included in the procurement request was from NAMMO. Although Dr. Uhler's procurement letter did not identify NAMMO by name, the 70mm rocket warhead was considered to be "synonymous" with NAMMO for the reasons

explained by Captain Huss. Under these circumstances, by including the reference to NAMMO, Calvert did not intentionally misrepresent the facts and did not demonstrate a reckless disregard for the truth.

> ***"LtCol. Econom also added that 18 U.S.C. 207 prevents Spellissy from representing NAMMO before the federal government for two years after retirement."*** (¶ 8).

Defendants contend that by making this statement, Calvert misrepresented what Lt. Col. Econom actually instructed Spellissy in her May 14, 2004 ethics letter addressing Spellissy's prospective employment with NAMMO. In his affidavit, Calvert accurately represented to the Magistrate Judge that Spellissy had requested Lt. Col. Econom's advice regarding "possible post-government employment with NAMMO, a Department of Defense contractor" (¶ 9). He represented that in her letter, Lt. Col. Econom "added that 18 U.S.C. § 207 prevents Spellissy from representing NAMMO before the federal government for two years after retirement" (¶ 9). This Court agrees that Calvert paraphrased Lt. Col. Econom's letter with reckless disregard for the truth.

According to Lt. Col. Econom's letter, attached to Defendants' motion as Exhibit F, Spellissy was not prohibited from representing NAMMO for two years. Lt. Col. Econom, in addressing Spellissy's prospective employment with NAMMO, explained the circumstances under which Spellissy could and could not represent NAMMO, including the two year employment prohibition with respect to matters which had been under his official responsibility, as proscribed by § 207(a)(2). However, that restriction, as earlier explained, deals with matters about which Spellissy knew or should have known were pending under his official responsibility concerning a specific party. Indeed, she explained that Spellissy was prohibited from representing NAMMO for two years with

respect to two specific contracts in which had been "under your official responsibility during your last year of service."[7]

In sum, it was reckless for Calvert to represent that Lt. Col. Econom had advised Spellissy that § 207 prohibited him from representing NAMMO for two years, without including an accurate reference to the qualifying restrictions in § 207. He had a copy of the letter and was admittedly aware of its content. The statement will therefore be redacted for purposes of evaluating whether the affidavit established probable cause.

Defendants contend that "the real thrust of this affidavit is that Colonel Spellissy is alleged to have secretly been working for NAMMO, a foreign entity, while on active duty." (Dkt. 39, p. 2). That may very well be an accurate description of Calvert's affidavit. According to Calvert, he believes Spellissy was illegally employed by NAMMO before his retirement on December 31, 2004, and within the two years after his termination from the service. Calvert's affidavit mirrors this theory of criminal culpability in paragraphs 7 through 10. Regardless of what Calvert personally believed and whether he was correct in that belief, however, the issue before this Court is whether his affidavit, with the intentional and reckless misstatements redacted, and even considering the omissions of fact Defendants complain are material, establishes probable cause that Spellissy violated § 207(a)(1) or (2).

---

[7] Lt. Col. Econom also addressed Spellissy's pre-retirement employment, advising: "You should also be aware that you may begin new employment prior to retirement. . . . [T]he JER requires you to obtain the prior approval of your supervisor if this employment is with a prohibited source. You must complete an off-duty employment application." Spellissy had in fact completed the off-duty employment application and obtained the express approval, based on the recommendations of Dr. Uhler and the Judge Advocate's office, of SOCOM's Unit Commander to be employed as the President of Strategic Defense International, which would "involve working for a firm . . . that is engaged, or is endeavoring to engage, in business . . . with an agency of the Department of Defense."

The Fourth Amendment is violated when a search warrant affidavit contains "deliberate falsity or reckless disregard" for the truth. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997), *citing Franks*, 438 U.S. at 171. Notwithstanding intentional misrepresentations or reckless misstatements, a defendant is entitled to relief only when, absent the false or reckless statements, the "affidavit's remaining content is insufficient to establish probable cause." *U.S. v. Novation*, 271 F.3d 968, 986-7 (11th Cir. 2001), *citing Franks*, 438 U.S. at 156. Likewise, intentional omissions and omission made with reckless disregard for the accuracy of the affidavit violate the Fourth Amendment. *Id.* Material omissions are treated essentially the same as material misrepresentations. *U.S. v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). Where omitted facts are added to an affidavit and probable cause is lacking, the warrant is void. *Id.* However, negligent, insignificant or immaterial omissions will not invalidate a warrant. *U.S. v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995), *cert. denied sub. nom., Miller v. U.S.*, 517 U.S. 1228 (1996).

### Conclusion

When a search warrant affidavit contains, as Calvert's affidavit does, intentional misrepresentations and statements made in reckless disregard for the truth, and omits material facts critical to probable cause, the question is whether, after deleting the misstatements and including the material omissions, the affidavit is sufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154; *U.S. v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986).

Excluding the false and reckless statements discussed, probable cause for a § 207(a)(2) violation remains on the face of the affidavit. Section 207 prohibits a former officer, for two years after termination of service, regardless of the officer's title or authority, from representing a contractor before the Department of Defense with respect to a particular matter which the officer knows or should know was pending before the officer during the last year of his service, which

involved a specific party. Based on the facts in Calvert's affidavit, there was probable cause to believe that when Spellissy represented NAMMO during the meeting concerning the 70mm rocket warhead with the government in Norway, he had reason to know that the 70 mm rocket warhead listed in Dr. Uhler's procurement letter was a NAMMO product and that it had been a matter under his official responsibility as PEO-SP during May 2004, contrary to the prohibitions in 18 U.S.C. § 207(a). Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Suppress Results of Search (Dkt. 21) is **DENIED**.

**DONE AND ORDERED** in chambers this 5th day of May, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record