UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.   Case No. 8:05-CR-475-T-27TGW

THOMAS SPELLISSY and
STRATEGIC DEFENSE INTERNATIONAL, INC.
_____/

ORDER

**BEFORE THE COURT** is Defendants Thomas Spellissy and Strategic Defense International, Inc.'s "Alternative Authority Motion for New Trial Filed Pursuant to Fed. R. Crim. Rule 33(a) and/or 60(b)(6) (Dkt. 158). The motion in part constitutes a successive § 2255 motion and is accordingly **DISMISSED** for lack of subject jurisdiction. Defendants' Rule 33 motion for new trial based on newly discovered evidence is DENIED.

Defendants were convicted after a jury trial of conspiracy to defraud the United States and to commit bribery and wire fraud (Dkts. 62, 63; 85, 86). The convictions were affirmed on appeal (Dkt. 134). The instant motion is the *seventh* post trial motion filed by the same attorneys in which they sought either a new trial or to have Defendants' convictions vacated (Dkts. 125, 126, 129, 130, 133, 151). Two of the motions sought a new trial pursuant to Rule 33, Fed. R. Crim. P. (Dkts. 125, 129). Four of the motions sought relief pursuant to 28 U.S.C. § 2255 (Dkts. 126, 130, 133, 151).[1] All post trial motions have been either denied or dismissed (Dkts. 145, 146, 152). Defendants did

---

[1] Dkts. 130 and 133 were entitled "Addendums" but were docketed as amended motions and considered as such by the Court.

not appeal any of those orders.

**The instant motion constitutes a successive petition**

Of the four motions filed pursuant to § 2255, (Dkts. 126, 130, 133, 151), the first three were summarily denied (Dkt. 145, pp. 2-4). The third § 2255 motion, Defendants' "Joint Motion for New Trial Based on Prosecutorial Misconduct, Inefective [sic] Assistance of Counsel and New Evidence" (Dkt. 151), was dismissed as a successive petition (Dkt. 152). Defendants did not appeal that order. In light of the number of post trial filings seeking collateral relief, that order explained the limitation on successive petitions and the requirement of obtaining an order from the Court of Appeals authorizing the district court to consider a successive § 2255 motion (Dkt. 145). Apparently, this Court mistakenly presumed that Defendants' attorneys "were aware of the limitation on successive petitions." (Dkt. 145, p. 2, n.3). Once again, these attorneys have, without having obtained an order from the Eleventh Circuit, filed a successive petition seeking to vacate Defendants' convictions and sentences (Dkt. 158, p. 15)("There [sic] are reversible and requires vacation of movant's conviction and sentence.")[2]

Since Defendants had already filed at least one motion pursuant to § 2255, the instant motion is properly construed as a successive § 2255, notwithstanding its designation as a Rule 60(b) motion. *Gonzalez v. Crosby,* 545 U.S. 524, 531-32 (2005); *Galatolo v. United States,* 196 Fed. Appx. 854 (11th Cir. 2006).[3] The instant motion includes allegations of a denial of their Sixth Amendment right of confrontation during the *Franks* hearing, newly discovered evidence, ineffective assistance of counsel, and prosecutorial misconduct through the knowing use of perjured testimony (Dkt. 158,

---

[2] Although there is a "Remark" on the Court's docket that Defendant Spellissy applied to the Eleventh Circuit for leave to file a second or successive motion to vacate, there is no indication that leave was granted. (*See* January 16, 2008 docket entry.) Moreover, Defendants do not contend that leave has been granted by the Circuit Court.

[3] The holding in *Gonzalez* is applicable to § 2255 cases. *See El-Amin v. United States,* No. 05-1276, 172 Fed. Appx. 942 (11th Cir. Mar. 28, 2006); *United States v. Terrell,* No. 02-14997, 141 Fed. Appx. 849 (11th Cir. Jul. 19, 2005).

pp. 2-5, 7, 9).[4] Although ostensibly filed pursuant to Rule 60(b), Fed. R. Civ. P. and 8 U.S.C. § 1651, the motion is properly construed as a § 2255 motion, at least in part, as it includes allegations directed to the claimed legality of Defendants' underlying convictions.[5] *United States v. Jordan*, 915 F.2d 622, 629 (11th Cir. 1990); *Sharpe v. United States*, 213 Fed. Appx. 912, 913-14 (11th Cir. 2007); *United States v. Spuza*, 194 Fed. Appx. 671, 674 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1011 (2007). Thus, to the extent Defendants' claims raise new evidence of constitutional violations not addressed in their prior §2255 motion(s), the instant motion constitutes a successive § 2255 motion to vacate, which this Court does not have jurisdiction to consider. *Id.* As for Defendants' Rule 33 contention that newly discovered evidence demonstrating their actual innocence has been discovered, the merits of that contention will be discussed separately.

In their motion, Defendants' proffer argument in support of claims which have already been raised and disposed of (prosecutorial misconduct, ineffective assistance of counsel), raise new substantive claims (right to confrontation, actual innocence), and include a new claim of "newly discovered evidence." By their motion, Defendants seek to have their convictions vacated, rather than relief from the Order denying their prior § 2255 motion(s) (Dkt. 158, p. 15)("There [sic] are reversible and requires vacation of movant's conviction and sentence.") Each of the claims raised in the instant motion, including the claim of "newly discovered" evidence, are directed to the validity

---

[4] Citing *Crawford v. Washington*, 541 U.S. 36 (2004), Defendant's argue that they were denied the right of confrontation during the *Franks* hearing premised on their inability to cross examine witnesses which Defendants contend the Government never made available (Dkt. 158, pp. 3-4). Defendants' reliance on *Crawford* is misplaced. The right of cross examination is a trial right. *See United States v. Cantellano*, 430 F.3d 1142 (11th Cir. 2005); *United States v. Sanchez*, __ F. 3d __, 2008 WL 2108245, 1 (11th Cir. 2008). Regardless, the *Franks* inquiry involved the sufficiency of S.A. Calvert's affidavit, who testified at the hearing and was cross examined extensively.

[5] The inartfully drafted motion seeks relief pursuant to Rule 60(b) and Rule 33. To the extent the motion seeks a new trial based on newly discovered evidence establishing actual innocence, a Rule 33 motion filed more than seven days after the verdict may only address newly discovered evidence showing actual innocence, not constitutional violations. *United States v. Spuza*, 194 Fed. Appx. 671 (11th Cir. 2006).

of the underlying convictions, rather than any claimed defects in the order(s) denying the previous § 2255 motions. Accordingly, the instant motion is properly construed as a successive § 2255 motion, as Defendants do not allege defects "in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby,* 545 U.S. at 532.

Indeed, even a cursory review of the motion demonstrates that it is essentially a repeat of an earlier § 2255 motion. Defendants' "new evidence" claim is based on the December 21, 2007 sworn testimony of Donald Jones and the November 29, 2007 affidavit of James Rooney. (Dkt. 158, Exs. 1, 4). In their previous *construed* § 2255 motion, which was dismissed as successive, Defendants relied on the very same evidence. In that motion, Defendants expressly referenced Jones' December 27, 2007 testimony as "new evidence" (Dkt. 151, p. 13). Likewise, that motion referenced Rooney's affidavit as "Exhibit A" (Dkt. 151, p. 14). As noted, Defendants did not appeal the dismissal of their previous motion.[6]

Defendants may not circumvent the successive petition rule by designating their motion as a Rule 60(b) motion. *Id.* ("Using Rule 60(b) to present new claims for relief... even claims couched in the language of a true Rule 60(b) motion-circumvents AEDPA's requirement[s] ... In addition to the substantive conflict with AEDPA standards, . . . use of Rule 60(b) would impermissibly circumvent the requirement that a successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar. § 2244(b)(3)."). *Id.* at 531-32; *Wofford v. Scott,* 177 F.3d 1236, 1245 (11th Cir. 1999)(petitioner whose prior § 2255 motion has been denied

---

[6] The Government correctly argues that Defendants are therefore barred by the law of the case, as these very same contentions of newly discovered evidence were rejected when Defendant's construed § 2255 motion was dismissed as a successive motion (Dkt. 152).

may not circumvent successive-petition rule by filing under § 2241).

When a federal prisoner has previously filed a § 2255 motion to vacate, he must obtain permission from the Circuit Court before filing a second § 2255 motion. 28 U.S.C. §§ 2255, 2244(b)(3)(A); *In re Blackshire*, 98 F.3d 1293, 1293 (11th Cir. 1996). There is no indication that Defendants have obtained permission from the Eleventh Circuit to file this motion. Accordingly, the claims raised in the successive motion, at least to the extent they collaterally attack the underlying convictions, must be dismissed. 28 U.S.C. § 2244(b)(2)-(3). *United States v. Terrell*, 141 Fed. Appx. 849, 852 (11th Cir. 2005).

**Proffered Rule 33(a) evidence not newly discovered**

Defendants alternatively seek a new trial pursuant to Rule 33(a), based on alleged newly discovered evidence. Motions for new trial based on newly discovered evidence are disfavored. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006)("Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution.").

To obtain a new trial based on newly discovered evidence, Defendants must establish that (1) the evidence was discovered after trial, (2) Defendants' failure to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, and (5) the evidence is such that a new trial would probably produce a different result. *United States v. Schlei*, 122 F.3d 944, 991 (11th Cir. 1997).[7] "The failure to satisfy any one

---

[7] An evidentiary hearing is not necessary, as the undersigned presided over the *Franks* hearing and Defendants' trial. *United States v. Spuza, supra* (citing *United States v. Schlei*, 122 F.3d at 994)("A defendant is not entitled to an evidentiary hearing for a motion for a new trial if 'the acumen gained by a trial judge over the course of the proceedings [made him] well qualified to rule on the [evidence] without a hearing.'").

of these elements is fatal to a motion for a new trial." *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995).

As noted, Defendants contend that they have discovered "new evidence," demonstrated by the December 21, 2007 testimony of Donald Jones and the November 29, 2007 affidavit of Jim Rooney. (Dkt. 158, Exs. 1, 4). Considering that Defendants and their attorneys knew of the identities and likely testimony of both Jones and Rooney well before trial, Defendants cannot satisfy the first factor in the four part test for obtaining a new trial.[8] Nor have they demonstrated that the testimony of Jones and Rooney could not have been obtained through the exercise of due diligence.

Defendants contend that the testimony of Don Jones and the affidavit of James Rooney confirm that Defendant Spellissy did not attend a November 2004 meeting with NAMMO in Norway during which a 70mm warhead program was discussed. Defendants argue that this "new evidence"

> ". . . will clarify that the government's defense and affidavit(s) used to obtain the search warrant in the instant case, was adopted, used, and relied upon by the District Court to deny movant's motion to suppress evidence pursuant to Franks v. Delaware, (citation omitted) causing error, due to knowingly misleading and fraudulent statements found in the 'Application and Affidavit for Search Warrant' which directly caused an erroneous determination to be reached by the district court that highly prejudiced the defendants, and precluded an accurate finding to be made based on a complete and accurate record, and thereby causing a defect in the proceeding's integrity which mandates relief."

(Dkt. 158, p. 3).

The record confirms that Defendants and their attorneys knew, well before trial, that Donald Jones had attended the November 2004 meeting in Norway and that the Rooney Group was involved with the 70mm warhead program in a consulting capacity. Defendant Spellissy was interviewed by

---

[8] In their earlier motion(s), Defendants likewise contended that they had discovered "new evidence," which they described as: (1) "Witness Tampering by the Government"; (2) that co-conspirator William Burke was "found guilty of perjury" in a subsequent trial; (3) that Spellissy has passed a "Polygraph Test"; (4) that "Spellissy was on active duty for the United States Army when the alleged conspiracy was born"; and (5) "[t]he Department of Justice doesn't have jurisdiction on Defendant Spellissy." (Dkts. 125, 129).

federal agents on April 13, 2005 when the warrant was executed at his residence. During that interview, Spellissy told them that he was present in Norway in November 2004, explained that he was working with the Rooney Group as a consultant and that he went with Donald Jones to NAMMO to discuss the 70mm warhead program. Before he was arrested, Spellissy knew, therefore, that Jones attended that meeting and that Jones could confirm whether Spellissy had excused himself at some point during a particular meeting. Moreover, Special Agent Calvert's affidavit, submitted in support of the search warrant, identifies Jones as having been in Norway in November 2004.

Additionally, just as Spellissy had done when he spoke with the agents in April 2005, Defendants referred to the Rooney Group in pleadings filed earlier in the case. (Dkt. 151, p. 14). According to what Spellissy told the agents, he had a contract with the Rooney Group as a consultant. The record bears out, therefore, that Defendants knew of the involvement of both Donald Jones and James Rooney in the events in Norway, even before the *Franks* hearing was conducted. In a pleading filed just before that hearing, Defendants expressly named Don Jones as in individual with whom S.A. Calvert must have spoken with (Dkt. 25). Moreover, Defendants listed Jones as a USSOCOM witness they desired to interview during pre-trial proceedings (Dkt. 158, Ex. 2).

The trial in this case began on May 8, 2006 and concluded on May 12, 2006 (Dkts. 49, 62-63). The *Franks* hearing was conducted on April 18, 2006 (Dkt. 37). Jones was in Iraq from March 2006 through August 2006 and therefore unavailable, through no fault of the Government. Defendants, although acknowledging that their attorneys knew of Donald Jones as early as April, 2006, nonetheless contend that "the government never made these witnesses available . . ." and "failed to provide the opportunity for the Defendants during the Motion to Suppress hearing to confront and cross examine and confront the government's witness and his accuser, Major Jackson"

(Dkt. 158, p. 4). Defendants' contentions are belied by the record.

Finally, Donald Jones was listed by the Defendants as a trial witness (Dkt. 46). Also, in their trial exhibit list, Defendants listed as Exhibit 3b, "William Burke's Card to Jim Rooney" and as Exhibit 8, "E-mails between Colonel Spellissy and Don Jones." Accordingly, it is disingenuous for Defendants to contend that Jones' testimony and the substance of Rooney's affidavit constitutes "newly discovered" evidence.

Similarly, Defendants have not satisfied the second, third, fourth and fifth elements of the test for newly discovered evidence. Although aware of Jones' participation in the November 2004 meeting and Rooney's involvement in the NAMMO 70mm warhead project, Defendants did not exercise due care to discover the substance of what Jones and Rooney could have offered as witnesses at the *Franks* hearing or at trial. In short, as the Government contends, "Defendants did nothing to secure their testimony for the Franks hearing." (Dkt. 165, p. 11). Defendants' reasons for not seeking authority to interview Jones before trial, as they did with respect to other military witnesses, is not known. Likewise, why Defendants opted not to issue subpoenas to secure the attendance of these witnesses at trial or seek alternative means to perpetuate their testimony are not known. The Government correctly points out that the Court authorized Defendants to perpetuate General Brown's testimony by video deposition. If pursued, similar arrangements were available to Defendants with respect to Jones.

As for the third element, Jones' and Rooney's versions of what transpired in Norway would merely have contradicted the information Calvert relied on in drafting his search warrant affidavit and the averments therein, including a statement provided by Jones. In short, Jones' and Rooney's testimony would not have established that the information Calvert relied on was false or that he was

reckless in relying on it, the appropriate inquiry in a *Franks* hearing.

As for the fourth element, materiality, it is apparent that Spellissy's presence in Norway during the NAMMO meetings in November 2004 was material to probable cause undera *Franks v. Delaware* analysis of Calvert's affidavit. (Dkt. 165, pp. 12-13). However, as the Government correctly argues, neither Jones' or Rooney's testimony would have been material to whether Calvert's affidavit contained false statements or whether Calvert recklessly relied on the evidence and statements he referenced in his affidavit. Calvert's averment with respect to Spellissy's presence in Norway originated from Major Shannon Jackson's statement. According to that statement, Major Jackson attended the November 2004 meeting. Calvert relied on that statement and an email from NAMMO's Director of Business Operations, Jerry Kaffka, that Spellissy had represented NAMMO and attended the meeting at NAMMO (Dkt. 165, p. 11).

Nothing at the hearing established that Calvert's reliance on Jackson's statement or Kaffka's email was reckless or that the statement or email did not in fact exist. Moreover, Calvert's reliance on Jones' tape recorded statement, in which Jones attributed to Spellissy a remark that he was "not there as a consultant, but as a NAMMO rep." was not shown to have been reckless.

While in its Order denying Defendants' motion to suppress, the Court referenced Spellissy's attendance "during the meeting concerning the 70mm rocket warhead," Spellissy's attendance at that particular meeting was not determinative. What was determinative were the averments in Calvert's affidavit, not shown to have been false or reckless, which placed Spellissy in Norway as a NAMMO consultant in November 2004 when the 70mm warhead was discussed, and that Spellissy had reason to know that NAMMO's 70mm warhead, listed on Dr. Uhler's procurement letter, had been a matter under Spellissy's official responsibility as PEO-SP during May 2004. This, and Spellissy's own

words that he had gone to Norway as a NAMMO "rep" supported a determination of probable cause that he violated 18 U.S.C. § 207(a), notwithstanding whether Spellissy excused himself from a particular meeting.[9]

Finally, Defendants have not shown that Jones' and Rooney's testimony would have produced a different result, that is, that the products of the search of Spellissy's residence would have been suppressed based on lack of probable cause. The issue in the *Franks* hearing was whether Special Agent Calvert's affidavit supported a determination of probable cause that Spellissy had violated 18 U.S.C. § 207(a) and (b) or § 208(a). (Dkt. 44). While Jones' testimony that Spellissy excused himself from a particular meeting in Norway may have cast some light on Jackson's recollection, as well as Spellissy's intent to comply with the statutory limitations in § 207(a), it would not have demonstrated that Special Agent Calvert's affidavit was false or that he recklessly relied on information he obtained which placed Spellissy at the meeting. Most importantly, Jones' and Rooney's testimony would not have negated probable cause to believe that when Spellissy was in Norway less than two years after his termination from the military as a consultant for NAMMO, Spellissy had reason to know that NAMMO's 70mm warhead had been a matter under his official responsibility within one year of his termination from service, as prohibited by § 207(a)(2).

In sum, Defendants have not established that Jones' and Rooney's testimony constitute "newly discovered" evidence and have not demonstrated that this evidence could not have been discovered through the exercise of due diligence. *See United States v. Spuza, supra* at 676.

---

[9] Moreover, as the Government points out, Defendants cite no authority for the proposition that a defendant may satisfy his burden based on newly discovered evidence for obtaining a new trial by showing that the claimed new evidence would have produced a different result at a suppression hearing, rather than trial.

Likewise, the alleged new evidence would only have impeached a source relied on by Calvert, and therefore would not have been material to whether Calvert recklessly relied on that source in making the averments he did to obtain the search warrant. Defendants' motion to suppress would have been denied regardless.

Neither have Defendants shown that the prosecutor engaged in misconduct or that the Government prevented Defendants from developing this evidence before the *Franks* hearing and trial. Unsubstantiated allegations and accusations of government misconduct like those made by these Defendants are not sufficient to support a motion for new trial based on newly discovered evidence. *United States v. Spuza, supra* (citing *United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997)). To the extent that this claim is not barred by the successive petition rule, Defendants' Rule 33 motion for new trial is accordingly DENIED.

Finally, Defendants' argument that the claimed "newly discovered" evidence establishes their actual innocence is not persuasive. Essentially, their claims are directed to the legal sufficiency of the evidence rather than factual innocence. Defendants' arguments and submissions neither establish nor tend to show actual innocence of the charges on which the jury convicted them. The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not just legal insufficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir.2001), *cert. denied*, 535 U.S. 926 (2002); *Sawyer v. Holder*, 326 F.3d 1363, 1367 (11th Cir.2003); *Sharpe v. United States*, 213 Fed. Appx. 912, 914 (11th Cir. 2007).

Accordingly, Defendants Thomas Spellissy and Strategic Defense International, Inc.'s "Alternative Authority Motion for New Trial Filed Pursuant to Fed. R. Crim. P. Rule 33(a) and/or 60(b)(6)" (Dkt. 158) is **DISMISSED** for lack of subject jurisdiction. Defendants' Rule 33 motion

for new trial based on newly discovered evidence is DENIED.

**DONE AND ORDERED** in chambers this 2nd day of September, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record