UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.  Case No. 8:05-CR-475-T-27TGW

THOMAS SPELLISSY and
STRATEGIC DEFENSE
INTERNATIONAL, INC.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Joint Petition for Writ of Error *Coram Nobis* (Dkt. 226) and the Government's opposition (Dkt. 227). The essence of Defendants' petition is a contention that their conspiracy conviction was premised on allegations which do not constitute a criminal offense under 18 U.S.C. §§ 1343 and 1346. Defendants cite *Skilling v. United States*, 561 U.S. ___, 130 S.Ct. 2896 (2010) in support of their contention. Upon consideration, Defendants' petition is DENIED.

A petitioner who has served his sentence and is no longer in custody may petition for a writ of error coram nobis, although relief is not routinely granted, as the finality of criminal convictions would be undermined. *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). The writ is an extraordinary remedy of last resort, "available only in compelling circumstances where necessary to achieve justice." *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000); *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954)("This jurisdiction was of limited scope; the power of the court thus to vacate its judgments for errors of fact existed . . . in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and

invalid.")(quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)); *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

In sum, coram nobis review is an "extraordinary remedy," limited to errors "of the most fundamental character." *United States v. Mills*, 221 F.3d at 1203. It is not available to relitigate criminal convictions. *United States v. Addonizio*, 442 U.S. 178, 186 (1979).

### Count One of the Indictment

Count One alleged a § 371 conspiracy with two objects, (1) defrauding the United States of honest services, and (2) the commission of the offenses of bribery and wire fraud (Dkt. 1, pp. 2-3). More specifically, it was alleged that Spellissy, Strategic Defense International, Inc. and others conspired to defraud the United States "by impeding, impairing, obstructing, and defeating the lawful government functions of the Department of Defense in the operation of its program in a manner that was honest, fair, and free from deceit, craft, trickery, corruption, and dishonesty; and to commit offenses of bribery and wire fraud against the United States, in violation of 18 U.S.C. §§ 1343, 1346 and 2.

Defendants, citing *Skilling*, contend that Count One of the Indictment, the only count on which Defendants stand convicted, was premised on an improper theory of honest services wire fraud and conduct that "does not constitute a crime" (Dkt. 226, p. 2). The Government correctly points out, however, that Count One alleged a § 371 conspiracy with two objects, defrauding the United States of honest services, and the commission of bribery and wire fraud, and that Count One "plainly charged a bribe-and-kickback scheme as the first object of the section 371 conspiracy . . ."

(Dkt. 227, p. 5).[1] Under *Skilling,* such bribe schemes are proscribed by 18 U.S.C. § 1346. *Skilling,* 130 S.Ct. at 2931.

Count One of the Indictment alleged that Spellissy, the President of Strategic Defense International, Inc., was employed as a consultant by "various companies seeking to transact business with the United States Special Operations Command" ("SDI")(Dkt. 1, ¶¶ 1, 4). William Burke was alleged to have been "employed by a private contractor and assigned to the United States Special Operations Command Special Operations Acquisition and Logistics center, Management Directorate," and in that capacity, Burke acted "on behalf of the United States and the United States and the Department of Defense." (Id. at ¶ 5).

In the Manner and Means section, the Indictment alleged how the bribe scheme was to be carried out. Spellissy formed SDI which was used to make payments to Burke (Dkt. 1, ¶ 7). Burke formed a company which was used to accept illegal payments from Spellissy (Id. at ¶ 8). Burke agreed to "provide preferential treatment to specific contractors represented by . . . Spellissy." (Id. at ¶ 10). Spellissy agreed to make "illegal payments to Burke for providing preferential treatment to certain projects." (Id. at ¶ 11).

After *Skilling*, the only constitutionally permissible prosecutions for honest services fraud are those which involve bribes or kickbacks. 130 S.Ct. at 2931. ("[W]e now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case law."). Contrary to Defendants' contention, Count One of the Indictment alleged conduct which plainly falls within the reach § 1346, as construed by *Skilling,* that is, the core category of "fraudulent schemes to deprive

---

[1] Defendants are correct that the Government relied on a bribery scheme at trial, as opposed to a kickback scheme.

another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Skilling*, 130 S.Ct. at 2928. Indeed, the bribe scheme alleged in Count One is illustrative of the precedents *Skilling* describes as "core pre-*McNally* applications." *Id.* at 2931 (". . . schemes involving bribes or kickbacks as 'core . . . honest services fraud precedents'"). *Id.*

In summary, Count One alleged, and the evidence at trial proved, that Defendants and Burke conspired to commit the offense of wire fraud and bribery in violation of § 1346, whereby Spellissy and SDI agreed to compensate Burke in exchange for preferential treatment of their clients in obtaining contracts from the United States Special Operations Command ("SOCOM"), thereby depriving the United States of Burke's honest services in his capacity as a civilian contractor assigned to administer programs designed to identify and acquire products for military use.[2] The evidence at trial included emails between Spellissy and Burke demonstrating their conspiratorial agreement and Burke's agreement to use his position as the supervisor of the Comparative Testing Office to influence the awarding of government contracts on behalf of Spellissy's clients. (Gov. Exhs. 7-15). Unlike the Indictment in *Peter*, therefore, this Indictment alleged, and the evidence ultimately proved, a conspiracy involving a bribe scheme. This conduct constitutes a crime under § 1346, as limited by *Skilling*.

Although Defendants were convicted on Counts Two and Three, the substantive bribery

---

[2] The Government accurately describes the evidence which proved the conspiracy charged in Count One (Dkt. 227, pp. 6-7). Spellissy, formerly a Colonel in the U.S. Army, knew Burke as a civilian contractor at SOCOM, where Burke worked as the Supervisor of the Comparative Testing Office, administering programs designed to identify and acquire products for military use. After Spellissy retired, he formed SDI and was hired as a consultant by private contractors attempting to obtain contracts from SOCOM. Burke agreed to work for Spellissy and SDI, while he continued to work as a civilian contractor at SOCOM. Burke and Spellissy began exchanging emails which revealed that Burke agreed to use his position to attempt to influence the awarding of contracts on behalf of Spellissy's clients. Burke touted his ability to influence the contract award process and even complained that certain of Spellissy's clients were not fairly compensating Burke and Spellissy for their efforts. It was undisputed that Burke was paid by SDI, although he maintained during his trial testimony that he was paid for legitimate services performed for SDI.

counts, Defendants' Joint Renewed Motion for Judgments of Acquittal was granted as to Counts Two and Three, essentially because the Government's primary witness, Burke, disavowed his plea agreement and maintained that he never accepted a bribe.[3] As Burke's testimony was not contradicted, this Court found, notwithstanding the jury's verdict, that the Government presented no evidence that demonstrated that "Defendants 'directly or indirectly gave or offered or promised something of value' to Burke . . .with intent to influence an official act or to influence [Burke] . . ." (Dkt. 72, pp. 2-3). The guilty verdicts on the substantive bribe counts were therefore not sustainable.

That the Government's evidence failed to prove that actual bribes were paid to Burke does not negate the evidence which established the agreement to do so, as charged in Count One. The Government correctly argues that the § 371 conspiracy is a separate and distinct offense from the substantive bribery charges alleged in Counts Two and Three of the Indictment. *See United States v. Corley*, 824 F.2d 931, 939 (11th Cir. 1987)("Conspiracy and the related substantive offense which is the object of the conspiracy are considered separate and distinct crimes . . . [A]n acquittal on the substantive count does not foreclose prosecution and conviction for a related conspiracy.").

Moreover, although the evidence at trial did not establish beyond a reasonable doubt that the money paid to Burke by SDI was an actual bribe, as opposed to compensation for services rendered, that does not change the fundamental nature of the scheme. The evidence established that Spellissy and Burke agreed, that in exchange for money from Spellissy, Burke would attempt to use his position to provide favorable treatment to Spellissy's clients. The evidence therefore proved an illicit agreement to deprive the United States of Burke's honest services through the payment of

---

[3] Burke explained a $4500 payment to him from SDI, testifying that he performed in excess of 45 hours of legitimate work for SDI and was paid at the rate of $100 per hour.

money to Burke to gain preferential treatment for Spellissy's clients in the awarding of government contracts.

Unlike the indictment in *Skilling*, Defendants' convictions are not flawed by an indictment alleging alternative theories of guilt. Count One alleged a single conspiracy to defraud the United States of Burke's honest services through bribery and that Defendants carried out that scheme through wire fraud. Contrary to Defendants' argument, the Indictment did not allege a deprivation of honest services involving undisclosed self - dealing or a mere conflict of interest.

To the extent Defendants argue that the jury instructions did not adequately charge the jury under *Skilling*, that contention is rejected. More specifically, Defendants contend that the jury was instructed on alternative theories of honest services fraud, both conflict of interest and bribery, and this was error under *Skilling*. Defendants point to a single paragraph in the twenty five pages of jury instructions, which describes the duty on the part of an employee to "make a full and fair disclosure" of any "personal interest or profit the employee expects to derive or has derived from any transaction in which he or she participates in the course of the employment." (Dkt. 231, p. 3; Dkt. 58, p. 17). Defendants do not discuss this instruction in the context of the entire jury instructions, including the Court's summary of the charged conspiracy in Count One.

As the Government points out, the jury was expressly charged, as part of the Court's § 371 general conspiracy instructions, that Count One alleged a conspiracy to deprive the United States of Burke's honest services through the payment of a bribe. (Dkt. 58, pp. 8-9; 12):

> In this instance, with regard to the alleged conspiracy, the indictment charges that the Defendants conspired to bribe a public official <u>and</u> to commit wire fraud. It is charged, in other words, that they conspired to commit <u>two</u> separate, substantive offenses.

(Dkt. 58, p. 11).

Further, in the context of the specific conspiracy to defraud the United States charged in Count One, in the paragraph immediately preceding the paragraph relied on by Defendants, the jury was instructed on how the payment of a bribe to a public employee constitutes the deprivation of that employees' honest services within the context of honest services fraud proscribed in 18 U.S.C. § 1346:

> Public officials and public employees inherently owe a duty to the public to act in the public's best interest. If, instead, the official acts or makes his decision based on the official's own personal interests - such as accepting a bribe - the official has defrauded the public of the official's honest services even though th public agency involved may not suffer any monetary loss in the transaction.

(Dkt. 58, p. 16).

In sum, Count One properly alleged a single conspiracy to deprive the United States of Burke's honest services through bribery, and the jury was properly instructed on that bribery scheme. The Indictment and jury instructions were consistent with the reach of § 1346 honest services fraud prosecutions, as limited by *Skilling*.

Even if Defendant is correct that there was a flaw in the instructions under *Skilling*, any error was harmless. The inquiry is whether the claimed "flaw" in the instructions "had a substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth v. Pulido*, 555 U.S. 57 (2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993))(applying less stringent federal harmless error statute in collateral habeas corpus proceeding, rather than harmless error standard applied in direct review under *Chapman v. California*, 386 U.S. 18 (1967)("harmless beyond a

reasonable doubt"))._[4]_ Here, it did not.

The Indictment charged a conspiratorial honest services fraud by bribery scheme, the evidence demonstrated such a scheme, and the jury was instructed on such a scheme. Notwithstanding the general guilty verdicts, considering the bribery allegations in the Indictment, the evidence which supported those allegations, and the Government's theory of guilt it argued to the jury, the jury could not have been influenced to return a guilty verdict based solely on a conflict of interest honest services fraud theory by the single paragraph of the instructions Defendants complain of. Indeed, the jury's guilty verdicts on Counts Two and Three, albeit set aside, demonstrate the jury's focus on bribery.

The Government never argued that the conspiracy was premised solely on an alleged conflict of interest on Burke's part. To the extent the Government's final summation can be read to have touched upon the conflict of interest inherent in Burke agreeing to solicit and accept bribes from Spellissy to influence matters he was working on at SOCOM, that argument was interrelated with the Government's theory that the bribing of Burke deprived the Government of his honest services. In sum, the bribery scheme was the central focus of the Indictment, the evidence, and the Government's theory of guilt. The jury could not have based its guilty verdict on any other theory of guilt. Any claimed *Skilling* error was harmless.

---

[4] Even under the more stringent standard of harmless error, this Court finds that there is no reasonable possibility that the single paragraph explaining conflict of interest contributed to Defendants' convictions. Essentially, that single paragraph was subsumed within the entire instructions on honest services fraud and bribery. Considering that the evidence focused on the email exchanges between Spellissy and Burke concerning payments to Burke and the expected "quid pro quo" of preferential treatment for Spellissy's clients, the single conflict of interest paragraph could not reasonably have had an influence on the jury's verdict. As noted, the Court's initial summary of what Count One charged was very specific: "In this instance, with regard to the alleged conspiracy, the indictment charges that the Defendants conspired to bribe a public official and to commit wire fraud. It is charged, in other words, that they conspired to commit two separate, substantive offenses." (Dkt. 58, p. 11). This instruction captured the charged conspiracy in a nutshell, without room for the jury to distinguish conflict of interest from bribery.

## Conclusion

There is no "jurisdictional error" warranting the extraordinary relief of coram nobis. The conspiratorial conduct for which Defendants were indicted and convicted, as alleged in Count One of the Indictment, falls squarely within the scope of a 18 U.S.C. § 1946 bribery scheme, as discussed in *Skilling v. United States*, *supra*.

Defendants' Motion for Oral Argument (Dkt. 232) is DENIED.

**DONE AND ORDERED** in chambers this 28th day of December, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record