# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

2012 JUN 13 PM 1:10

MIDDLE
TAMPA, FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

CASE NO: 8:05-cr-475-T-27TGW

v.

THOMAS F. SPELLISSY,

    Defendant.
_____/

## AMENDED PETITION FOR WRIT OF ERROR *CORAM NOBIS*

Defendant, Thomas F. Spellissy pursuant to 28 U.S.C. § 1651(a), the All Writs Act, hereby petitions for a writ of error *coram nobis* regarding his conviction on Count One of the Indictment which alleged conspiracy to commit bribery and wire fraud. The basis for the writ is the district court made a fundamental error of fact and law when it authorized a search warrant for Defendant's house and during the pre-trial and trial phases of this case. The fundamental error of fact and law led the district court to issue a search warrant without probable cause, a jurisdictional error, and the resulting fruits of the search violated Defendant's Constitutional due process rights. Also, the fundamental error of fact and law made its way into the trial which caused a fundamental error in its proceedings and now with these facts known to the Court, the government, defense trial attorneys and jurors; no reasonable juror could have concluded beyond a reasonable doubt that Defendant is guilty of the alleged conspiracy because now there is reasonable doubt on the government's underlying theory of the criminal case. The government recently presented documents, specifically, the Army's DD 214 Certificate of Discharge,

from its own Administrative Record, to Defendant in Case 1:11-cv-00205-GWM, attached Exhibit 1, as substantial proof that an error of fact and law occurred in the instant criminal case. Documents in the Administrative Record, the government's arguments and Court's ruling are material and relevant to the instant case because under Federal Rule of Evidence 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*A. Introduction.*

1. Defendant has exhausted his direct appellate rights as well as the collateral remedies provided by 28 U.S.C. § 2255. Moreover, his supervised release term is expired and therefore he is not currently serving any portion of the sentence imposed by this Court. However, he continues to suffer the effects of his conviction on Count One, which include the diminution of his military pension, harm to his reputation, loss of various civil rights including his rights to vote, hold office, and carry a weapon, and his exclusion, as a convicted felon, from participating in curricular and extracurricular activities normally available to parents at his children's schools.

2. Although Defendant was indicted and convicted on five counts, this Court previously granted his post-trial motion for judgment of acquittal as to Counts Two and Three, which alleged that Defendant committed bribery, and granted a new trial on Counts Four and Five, which alleged conspiracy with William Burke and two wire fraud offenses. *See* Indictment, Crim Dkt 1. Thus, the only remaining count of conviction is Count One, an alleged conspiracy to commit bribery and wire fraud. *See* Crim Dkt 85 (judgment on Count One for Defendant Spellissy). It should be noted that the conspiracy charge in

Count One is very similar to the conspiracy alleged in Counts Four and Five. *See* Indictment Count One paragraphs A, C and D and Count Four and Five paragraphs 1. A, C and D.

3. The basis of this petition for writ of error *coram nobis* is that the Government used evidence in the criminal case that was illegally seized, which is a violation of the IV Amendment of the Constitution. This illegally seized evidence, specifically, Government's Trial Exhibits, 10, 11, 12 and 28 were the only abstract circumstantial evidence that a juror may infer from the government's alleged theory at trial that when Defendant, *formerly* a Colonel in the U.S. Army, knew William E. Burke as a civilian contractor at SOCOM, where Burke worked as the Supervisor of the Comparative Testing Office, administering programs designed to identify and acquire products for military use and *after Defendant retired*, he formed Strategic Defense International, Inc. (SDI) who was hired as a consultant by private contractors attempting to obtain contracts from SOCOM which the jury relied on to convict Defendant in Count One. Defendant is entitled to issuance of a writ of error *coram nobis*, vacating his conviction on Count One because the abstract circumstantial evidence relied upon by the jury to infer guilt was illegally seized and the alleged theory presented to the jury is erroneous. The government offered argument in support of their theory Defendant Spellissy was on the outside of the government, retired and that SDI was formed after retirement which is not true by the government's own recent admission.

B. *The Writ of Error Coram Nobis.*

The All Writs Act, 28 U.S.C. § 1651(a), gives federal courts the authority to issue a writ of error *coram nobis*. *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000).

A writ of error *coram nobis* is a remedy to vacate a conviction, which is available, unlike relief under 28 U.S.C. § 2255, when the Defendant has served his sentence and is no longer in custody. *Peter*, 310 F.3d at 712. It is available to alleviate the consequences of a wrongful conviction that may continue after a sentence is complete. *United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997). The bar for *coram nobis* is high, and a Defendant may only obtain such relief where: (1) "there is and was no other available avenue of relief" and (2) "when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (quotation omitted). Because the "writ of error *coram nobis* is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice," courts may consider *coram nobis* petitions only where no other remedy is available and the Defendant presents sound reasons for failing to seek relief earlier. *Mills*, 221 F.3d at 1203-04. *Coram nobis* is traditionally only used to correct factual errors "material to the validity and regularity of the legal proceeding itself...." *Carlisle v. United States*, 517 U.S. 416, 134 L.Ed.2d 613, 116 S.Ct. 1460, 1467 (1996).

C. *The error of fact and law.*

1. The district court ruled at the motion to suppress hearing that while Defendant was on active duty and gave up his position as the Program Executive Officer for Special Programs on July 31, 2004 that Defendant had *effectively* retired from active duty. (Crim Dkt 44 p. 6). However, Defendant was not *effectively* retired from active duty as evidenced from government's presentation of facts bearing on the criminal case and by

the Court of Federal Claims in the cause to restore Defendant's military retirement pay that by statute, "[a] member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative." 10 U.S.C. § 1168(a). Conversely, "an individual is not released from active military duty until he has received his discharge papers." *See Garrett v. United States*, 625 F.2d 712, 713 (5th Cir. 1980). *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 27, attached. In the criminal case, not only did the district court determine when Defendant had gone to Europe in November, 2004 as a representative of the United States to attend classified and unclassified meetings that the Defendant was *retired* but also when emails were exchanged between alleged un-indicted co-conspirator (trial exhibits 10, 11, 12 and 28) William Burke and Defendant that Defendant was also *retired* from active duty. These findings are not factually correct by law.

2. The government pled and the Court of Federal Claims found that Defendant may have been on "terminal" leave or other leave status in October and November 2004 does not change the fact that Defendant was still on active duty until December 31, 2004, when the Army issued the DD Form 214 discharge papers that *effectuated* Defendant's legal separation from active duty in the military. Government Administrative Record, A000219; 10 U.S.C. § 1168(a); *see also e.g., Hamon v. United States*, 10 Cl.Ct. 681, 682 (1986) (noting that service members may take "terminal leave in anticipation of discharge"). *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 27. Attached Exhibit 2.

*D. Argument*

1. The criminal District Court ruled,

    "Excluding the false and reckless statements discussed, probable cause for a § 207(a)(2) violation remains on the face of the affidavit. Section 207 prohibits a former officer, for two years after termination of service, regardless of the officer's title or authority, from representing a contractor before the Department of Defense with respect to a particular matter which the officer knows or should know was pending before the officer during the last year of his service, which involved a specific party. Based on the facts in Calvert's affidavit, there was probable cause to believe that when Spellissy represented NAMMO during the meeting concerning the 70mm rocket warhead with the government in Norway, he had reason to know that the 70 mm rocket warhead listed in Dr. Uhler's procurement letter was a NAMMO product and that it had been a matter under his official responsibility as PEO-SP during May 2004, contrary to the prohibitions in 18 U.S.C. § 207(a)." (Crim Dkt 44 p.12-13.)

2. Subsequently, again the district court found,

    What was determinative were the averments in Calvert's affidavit, not shown to have been false or reckless, which placed Spellissy in Norway as a NAMMO consultant in *November 2004* when the 70mm warhead was discussed, and that Spellissy had reason to know that NAMMO's 70mm warhead, listed on Dr. Uhler's procurement letter, had been a matter under Spellissy's official responsibility as PEO-SP during May 2004. (Crim Dkt 166, p.9)

3. Quite simply, now, neither the facts nor the law support the issuance of the search warrant and the trial Judge's decision for probable cause to exist for an 18 U.S.C. § 207(a)(2) violation, because Defendant was not retired from the active duty during the time when the alleged meeting occurred. Also, Defendant must have actually represented NAMMO before the government *after retirement* and he must have known what particular matter was subject to prohibition. Jurisdictionally, a judge cannot issue a search warrant for an alleged post retirement conflict of interest violation when the event in question occurred *before retirement* which the Government now concedes to nearly six

6

years after the conviction. The magistrate judge did not have jurisdiction to issue a search warrant because Defendant was not subject to the laws 18 U.S.C. § 207 and 18 U.S.C. § 208 in November, 2004 because these laws pertain to post retirement activities as the district court clearly knows and memorialized in its order,

> "In summary, §207(a)(1) permanently restricts former officers from representing contractors before a department of the United States with the intent to influence the department in connection with a particular matter in which that person personally and substantially participated in as an officer. (*emphasis added*)
>
> §207(a)(2) prohibits an officer from representing a contractor before a department of the United States within two years after termination of the officer's service in connection with a particular matter in which the United States has a direct interest and the officer knows or reasonably should know was actually pending under the officer's official responsibility within one year before the officer's termination of service and involves a specific party at the time it was so pending. (*emphasis added*)
>
> 18 U.S.C. § 208(a) prohibits a former officer from personally and substantially participating as a government officer in a matter in which an organization with whom he is negotiating or has an arrangement for future employment without first obtaining, after full disclosure, a written determination by the government official responsible for his appointment, that the interest is not so substantial as to be deemed likely to affect the integrity of the services which the government may expect from the officer." (Crim Dkt 44, p. 3, fn4).

4. The 11th Circuit Court of Appeals also affirmed,

> "After he *retired* from the Army, it is alleged that Spellissy, through SDI, began working for NAMMO and, less than two years after his retirement, traveled to Norway to represent NAMMO during a meeting where he discussed the 70mm warhead with the United States. If true, his presence at the meeting in Norway would be in violation of 18 U.S.C. § 207(a)(2), which prohibits for two years a former employee of the executive branch from participating in a matter he reasonably would have known was pending under his official responsibility within a year of his retirement. Spellissy's presence at that Norway meeting formed the basis of an affidavit for a search warrant for his house, and the subsequent search found evidence which led to his conviction." (Appeal, No. 08-15208, Sept. 23, 2009 p. 3).

5. The 11th Circuit also acknowledged,

7

Specifically, the district court held that there was probable cause that (1) after his retirement, Spellissy began working for NAMMO and had represented NAMMO during a meeting in Norway where he discussed the 70mm warhead with the United States government, and (2) Spellissy had reason to know the warhead was a matter under his previous official responsibility within the last two years as prohibited by 18 U.S.C. § 207(a)(2). (Appeal, No. 08-15208, Sept. 23, 2009 p. 6).

6. The foregoing conclusions by the 11th Circuit are now factually incorrect as evidenced by the government's own Administrative Record.

7. From the government's own argument based on its Administrative Record from Case 1:11-cv-00205-GWM, attached as Exhibit 2, this Court can determine the following facts:

(a). In June 1979, Defendant Spellissy graduated from the United States Military Academy and was commissioned as a Second Lieutenant. A000307. Over the next 25 years, Defendant Spellissy steadily rose through the ranks, achieving his final promotion to Colonel, O-6, on December 1, 2001. A000233. On December 31, 2004, Defendant Spellissy retired from the Army in the grade of Colonel, O-6, with 25 years, 6 months, and 25 days of active duty service. See A000219. See Case 1:11-cv-00205-GWM, Dkt 9 p. 9.

(b). In his last assignment prior to retiring, Defendant Spellissy served as the Program Executive Officer for Special Programs ("PEO-SP") with the Army's Special Operations Command ("USSOCOM"), located at MacDill Air Force Base in Tampa, Florida. A00025-30. In this position, Defendant Spellissy was responsible for managing programs involving the acquisition and fielding of military equipment for USSOCOM worth hundreds of millions of dollars. A000230. See Case 1:11-cv-00205-GWM, Dkt 9 p. 10.

(c). By order dated March 18, 2004, the Army prospectively notified Defendant Spellissy that "[y]ou are retired from active duty, released from duty and assignment and duty, and . . . placed on the retired list" with an *effective* date of December 31, 2004. A000220. *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 10.

(d). In July 2004, Defendant Spellissy submitted an "Application and Approval for Off-Duty Employment," in which Defendant Spellissy sought official permission from the Army to participate in employment activities with a company he had formed called Strategic Defense International, Inc. ("SDI"), while Defendant Spellissy was on "terminal leave." A000183 at ¶¶ 8a, 9, 12. The Application and Approval for Off-Duty Employment specifically states that Strategic Defense International, Inc. is a Department of Defense Contractor. See A000183 ¶ 8c. Defendant's application also states that his employer is involved working for a firm or other entity that is engaged with in business transactions of any sort with an agency of the Department of Defense. See A000183 ¶ Defendant Spellissy's application was approved on July 23, 2004; *see* A000183, with the agreement that Defendant Spellissy "will not be able to represent any Department of Defense Contractor to solicit [new] business to the United States government until after [Defendant Spellissy's] retirement date, 31 December 2004." A000184. *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 10.

(e). On July 31, 2004, Defendant Spellissy completed his last assignment in the Army as the PEOSP of USSOCOM. A000133, A000137. Thereafter, Defendant Spellissy was still assigned to the Program Office of Special Programs; however he was not the PEO. Following a short period of administrative out processing from USSOCOM, Defendant Spellissy was on permissive temporary duty ("TDY") status and ordinary

leave status from September 1 to October 21, 2004. *See e.g.*, A000133-134 (time line). *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 10.

(f). On September 27, 2004, while on TDY [Temporary Duty], Defendant Spellissy put together a draft Itinerary for PEO SP personnel for their visit to Washington DC, October 24-28, 2004. *See* A000160-161, Case 1:11-cv-00205-GWM.

(g). On October 15, 2004 Defendant Spellissy was nominated and then approved by Mr. William S. Highsmith, Deputy Program Executive Officer, Special Programs to have access to Sensitive Compartmented Information (SCI) in support of Government contract USZA22-02-D-0014, in support of PEO-SP, [classified] Task Number 0075. *See* A000158, Case 1:11-cv-00205-GWM.

(h). On October 21, 2004, *while still on active duty*, Defendant Spellissy completed his administrative out processing requirements. A000185-88. On October 23, 2004, Mr. Spellissy received his final officer evaluation report ("OER"). A000225. *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 11.

(i). On October 21, 2004 when Defendant turned in his Government access badge to USSOCOM security, he was issued a Government Contractor badge for Government contract USZA22-02-D-0014, in support of PEO-SP, [classified] Task Number 0075. *See* A00015, Case 1:11-cv-00205-GWM.

(j). In approximately late 2004, Defendant Spellissy, while on approved leave status, began outside employment with his company, SDI, and signed e-mail correspondence as the "President of SDI" while working for the Government. *See* A000106-109, 115-121, 123. *See* Case 1:11-cv-00205-GWM, Dkt 9 p. 11.

(k). The administrative record includes more evidence that Defendant continued working for the government into November 2004. On November 4, 2004 Mr. Don Jones, Program Manager, Ammunition sent an email to Defendant concerning two FY 2005 FCT ammunition programs. There is an attached excel spreadsheet referenced in the email that needed to be analyzed. *See* A000162. Also, *see* A000163-164, *See* Case 1:11-cv-00205-GWM.

(l). On November 8, 2004 Don Jones sent a request to Defendant requesting him to attend meeting in Sweden, Norway and Germany on or about November 27- December 4 2004 to discuss ammunition programs. *See* A000189, *See* Case 1:11-cv-00205-GWM.

(m). On November 9 and 10, 2004 Defendant communicates with Don Jones, William Burke, Stan Highsmith and the PEO-SP, Captain Rowland Huss reference FCT government business and other issues that Defendant was working on behalf of the Government. *See* A000165-169, Case 1:11-cv-00205-GWM.

(n). On November 12, 2004 Program Manager for Shoulder Fired Weapons, Bhuvanesh Thoguluva sent out Government correspondence via email and instructs Don Jones to forward the email to "Col Spellissy." *See* A000170, *See* Case 1:11-cv-00205-GWM.

(o). On November 15, 2004 Defendant informs Dr. Dale Uhler, USSOCOM Acquisition Executive that he won the Picatinny Contract. The Defendant states "I look forward to assisting the government in any way I can." Dr. Uhler acknowledged the news and thanked Defendant. *See* AR000172, *Case* 1:11-cv-00205-GWM.

(p). In November, 2004 PEO-SP was having issues with a sub-contractor supplying equipment to a prime contractor. Captain Huss tasked the Defendant to fix the

problem. On November 18, 2004 Defendant fixed the problem for the government and Captain Huss was thankful. *See* A000174, Case 1:11-cv-00205-GWM.

(q). In continuing to support the government, Defendant traveled to Sweden, Norway and Germany on behalf of the United States Government. *See* A000178-182, Case 1:11-cv-00205-GWM.

(r). On December 31, 2004, Defendant Spellissy was honorably released from active duty in the Army with the rank and pay grade of Colonel, O-6, as evidenced by his Department of Defense ("DD") Form 214, "Certificate of Release or Discharge from Active Duty." *See* A000219. Case 1:11-cv-00205-GWM, Dkt 9 p. 11.

8. Given the foregoing facts from the government's Administrative Record and the record from the criminal case, there can be no misunderstanding that Defendant received permission to work as the President of SDI while on active duty/terminal leave, was on a SOCOM government contract, worked on government programs including FCT, performed in best interests of the government, never solicited new business on behalf of SDI or another Defense Contractor, and did not retire from active duty until December 31, 2004 after the meetings in Europe.

9. The fatal error of facts also made its way into the criminal trial which there is no doubt that the jury was totally misled by the government's indictment and presentation of the case. The government alleged in its opening statement to the Jury,

> "But what this case boils down to is Mr. Burke accepting money for providing preferential treatment for businesses which (Plaintiff)... worked as a consultant *after his retirement from the United States Military.*
>
> And that in very broad strokes, ladies and gentlemen is what it the case is all about." Crim Dkt 109, p. 189.

10. In its closing statement the government plead to the Jury,

12

"Remember, Mr. Spellissy had a very influential job at SOCOM, but he *retired*. He's not on the inside anymore." Crim Dkt 111, p.798.

11. During its prosecution of the criminal case, the government portrayed to the Jury the theory that Defendant had *retired* from active duty, started his own consulting company and conspired with an un-indicted co-conspirator to gain preferential treatment for Defendant and his company's clients. The government prosecution was so convincing to the District Court that Defendant had *retired* when the alleged offense of conviction occurred that when Defendant's counsel raised a jurisdictional question to the District Court concerning his active duty status in connection with the alleged conspiracy, the District Court ruled that "(i)t is undisputed that [Defendant] had *retired from active duty* when he committed the offenses of conviction." The Court held: "In sum, when these offenses were committed, [Defendant] was *retired from active duty*." (Crim Dkt 146, p. 6).

12. The District Court ruled when it denied Defendant's previous Coram Nobis for *Skilling* Error,

"The Government accurately describes the evidence which proved the conspiracy charged in Count One (Dkt. 227, pp. 6-7). Spellissy, *formerly* a Colonel in the U.S. Army, knew Burke as a civilian contractor at SOCOM, where Burke worked as the Supervisor of the Comparative Testing Office, administering programs designed to identify and acquire products for military use. *After Spellissy retired*, he formed SDI and was hired as a consultant by private contractors attempting to obtain contracts from SOCOM. Burke agreed to work for Spellissy and SDI...." (Crim Dkt 233, p. 4 fn2).

13. Nine months after the government filed Crim Dkt 227, the government filed in Federal Claims Court,

"By order dated March 18, 2004, the Army prospectively notified Mr. Spellissy that "[y]ou are retired from active duty, released from duty and assignment and duty, and ... placed the retired list" with an effective date of December 31, 2004. A000220." (Case 1:11-cv-00205-GWM, Dkt 9, p.10).

14. Furthermore, the Government argued in the Court of Federal Claims,

> "Furthermore, it is unequivocal that at the time that Mr. Spellissy engaged in the overt acts of conspiracy in October 2004, Mr. Spellissy was still on active duty in the Army and held the rank of Colonel. Mr. Spellissy concedes that he did not retire until December 31, 2004. Compl. ¶ 9. In addition, Mr. Spellissy's DD Form 214 discharge papers reflect that Mr. Spellissy's last day on active duty in the Army was December 31, 2004. *See* A000219. By statute, "[a] member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty . . . are ready for delivery to him." 10 U.S.C. § 1168(a). Conversely, "an individual is not released from active military duty until he has received his discharge papers." *See Garrett v. United States*, 625 F.2d 712, 713 (5th Cir. 1980). That Mr. Spellissy may have been on "terminal" leave or other leave status in October and November 2004 does not change the fact that Mr. Spellissy was still on active duty until December 31, 2004, when the Army issued the DD Form 214 discharge papers that effectuated Mr. Spellissy's legal separation from active duty in the military. A000219; 10 U.S.C. § 1168(a); *see also e.g., Hamon v. United States*, 10 Cl.Ct. 681, 682 (1986) (noting that service members may take "terminal leave in anticipation of discharge").
>
> In sum, there can be no question that Mr. Spellissy was on active duty in October and November of 2004 when he committed the misconduct that ultimately led to his conviction for conspiracy, as the board concluded. A000024-25 (¶ 2), A000099-104, A000122, A000208, A000219
>
> Or, it may be that the district court judge, a civilian, simply did not recognize the full import of Mr. Spellissy's being on "terminal" leave status prior to December 31, 2004, and that Mr. Spellissy, although effectively retired from his official duties in the Army, was actually still on active duty until he was officially discharged on December 31, 2004, when he received his DD Form 214. *See e.g.* AR000220, AR000226; *see also* Compl. ¶ 9; AR0000219; 10 U.S.C. § 1168(a).."
> (Case 1:11-cv-00205-GWM, Dkt 9, p. 21).

15. The Federal Court of Claims ruled,

> "Although plaintiff would not be officially retired until December 31, 2004, plaintiff's last assignment ended on July 31, 2004. *See* AR 000225–26. Plaintiff was on "permissive temporary duty," "ordinary leave," and "terminal leave" from August 1 to December 31, 2004. *See* AR 000133–34, 000226. Plaintiff worked for a contractor for USSOCOM from October 21 to November 26, 2004. *See* AR 000134, 000157–58. Plaintiff also was paid by USSOCOM to attend meetings overseas to discuss USSOCOM ammunition programs. *See* AR 000134, 000189. In October and November 2004, e-mails suggest that plaintiff was working as president of his newly formed company, Strategic Defense. *See* AR 000099–124.
>
> Plaintiff officially retired from active duty on December 31, 2004. *See* AR 000219; Compl. ¶ 9. Plaintiff was retired in the grade of Colonel, O-6, after more than twenty-five years of active duty service, with plaintiff achieving his most recent promotion on December 1, 2001. *See* AR 000219–20, 000233."

(Case 1:11-cv-00205-GWM Dkt 12 p.3 – attached Exhibit 3)

16. Now that the government has conceded that Defendant Spellissy was on active duty until December 31, 2004 and that SDI was a SOCOM government contractor with the government then it is beyond reasonable to conclude SDI had legally hired William Burke for some part time work; the Jury would have not found the evidence to be sufficient proof beyond a reasonable doubt that Defendant and SDI had conspired to defraud the government as alleged in Count One. See Jury instruction, Crim Dkt 58, p. 4. It is simply not reasonable for a juror to find that a high ranking government official, Defendant Spellissy, whose own company was on a government contract same as Burke's other employer, Sentel Corporation, conspired with a service support contractor who had no decision authority in deciding what proposals government program managers would submit to their Program Executive Officer for approval. The government stressed in its closing argument that Defendant was on the outside [of the government] and needed an inside [in the government] man. Also, since the government was also a client of SDI, the indictment does not accurately portray this fiduciary relationship that existed between the Defendants and the government. The indictment does not specify what client or what preferential treatment was sought after. The jury did not know the fact that the government was also a client and this is certainly fatal information on the government's alleged criminal conspiracy theory.

17. Defendant avers that a serious miscarriage of justice and a complete breakdown in the justice system has occurred because the government as one sovereign alleged probable cause for post retirement violations and presented illegally seized evidence and argued that the offense of Defendant's conviction in the Middle District of Florida was committed while Plaintiff was *retired* from active duty and nearly six years later argues

15

and presents evidence from its own Administrative Record in the Federal Court of Claims that Defendant was on active duty until December 31, 2004, and when Defendant had traveled to Europe to attend meetings at the government's direction and when the alleged offense of conspiracy was committed. The government has now contradicted and directly opposed what it had presented in the criminal case. The issue of whether or not Plaintiff was on active duty is absolutely material to the facts presented to the Jury in the underlying criminal case, and now the truth has surfaced from the government's argument and its Administrative Record which is directly contradictory and irreconcilable to the theory presented and committed to by the government which had been relied upon by the Jury and the U.S. District Court, all to Defendant's substantial detriment. The new assertion by the government in the matter *sub judice* that Defendant was on active duty and not retired at the time of the alleged offense of conviction guts the Government's tenuous criminal prosecution of the Defendant and demonstrates that Defendant was wrongfully convicted in the District Court.

18. "The bar for coram nobis relief is high, and the writ may only issue when (1) there is and was no other available avenue of relief" and (2) the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *United States v. Aviles*, 2010 WL 2070677, 1 (11th Cir. 2010)(quoting *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000)). As is the case here, there is and was no other available avenue of relief because the government and the Court had misunderstood the facts and the law during issue of the search warrant and the pre-trial and trial of the criminal case. The fact Defendant Spellissy was on active duty until December 31, 2004 and SDI was a

government contractor on a SOCOM contract are material and now renders the proceeding itself irregular and invalid because past findings and rulings from this court are in error.

**WHEREFORE**, defendant's petition pursuant to 28 U.S.C. § 1651(a) for issuance of writs of error *coram nobis* to vacate his conviction should be granted.

Respectfully submitted this 7th day of June, 2012.

_____
Thomas F. Spellissy, Pro Se
2213 Kent Place
Clearwater, FL  33764
727-744-5766


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by U.S. mail to Sheryl L. Loesch, Clerk of the Court, U.S. District Court, Middle District of Florida, located at U.S. Courthouse, 801 N. Florida Ave., Tampa, FL  33602-3800, and to U.S. Attorney Robert O'Neill, 400 N. Tampa Street, Suite 3200, Tampa, FL  33602 via email on this day of 7th day of June, 2012.

_____
Thomas F. Spellissy, Pro Se
2213 Kent Place
Clearwater, FL  33764
727-744-5766